NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 250253-U

NO. 4-25-0253

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 4, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* J.J., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Peoria County |
| Petitioner-Appellee, | ) | No. 21JA168 |
| v. | ) | |
| Jamaca F., | ) | Honorable |
| Respondent-Appellant). | ) | Derek G. Asbury, |
| | ) | Judge Presiding. |

JUSTICE LANNERD delivered the judgment of the court.
Presiding Justice Harris and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court granted appellate counsel's motion to withdraw and affirmed, concluding no issue of arguable merit could be raised on appeal.

¶ 2   In December 2023, the State filed an amended petition seeking to terminate the parental rights of respondent, Jamaca F., to her minor child, J.J. (born September 2020). Following fitness and best interest hearings, the trial court granted the State's petition and terminated respondent's parental rights. Respondent appealed, and counsel was appointed to represent her. Appellate counsel now moves to withdraw, citing *Anders v. California*, 386 U.S. 738 (1967), on the basis that he cannot raise any potentially meritorious argument on appeal. The record indicates a copy of counsel's motion and accompanying memorandum of law were sent to respondent by mail. Respondent has not filed a response. After reviewing the record and counsel's memorandum, we grant the motion to withdraw and affirm the court's judgment.

¶ 3                                     I. BACKGROUND

¶ 4          On April 30, 2021, the State filed an amended petition, alleging J.J. was a neglected minor under the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3 (West 2020)). The petition alleged, *inter alia*, J.J. was in an environment injurious to her welfare in that J.J.'s father, Mardale J., punched two holes in the wall of respondent's apartment during an argument with respondent. In addition, respondent and her former paramour, Paul C., had a history of domestic violence. Further, the petition alleged respondent failed to complete intact services and had unresolved mental health issues.

¶ 5          On July 23, 2021, the trial court adjudicated J.J. neglected pursuant to respondent's stipulation and section 2-3(1)(b) of the Juvenile Court Act (705 ILCS 405/2-3(1)(b) (West 2020)). Following a dispositional hearing that same day, the court made J.J. a ward of the court and continued her custody and guardianship with the Illinois Department of Children and Family Services.

¶ 6          The State filed an amended petition to terminate respondent's parental rights on December 7, 2023. The petition alleged respondent was an unfit parent in that she failed to (1) make reasonable progress toward the return of the minor to the parent during a nine-month period after the minor was adjudicated neglected (750 ILCS 50/1(D) (West 2022)) and (2) maintain a reasonable degree of interest, concern, or responsibility as to the minor's welfare (750 ILCS 50/1(D)(b) (West 2022)). The relevant nine-month period alleged was February 28, 2023, to November 28, 2023. In its petition, the State also included Mardale J., who is not a party to this appeal.

¶ 7          The trial court commenced the fitness hearing in September 2024. The State presented the testimony of Luke Otten, a former caseworker with Children's Home Association of

Illinois. Otten testified he had been J.J.'s caseworker from August 2022 to August 2023.

¶ 8    According to Otten, respondent was required to participate in (1) counseling, (2) a parenting class, (3) drug drops, (4) a domestic violence class, (5) a drug and alcohol assessment, and (6) a psychological assessment. Additionally, respondent was required to engage in visits with the minor. Respondent completed parenting classes and a psychological assessment, and according to Otten, "she started doing drug drops." While respondent completed a domestic violence class during the relevant time period, Otten indicated there were instances of domestic violence between respondent and Paul C. There were additional concerns that respondent and Paul C. were continuing their relationship. Otten stated, "[T]here were multiple police incidents over the course of several months, indicating that they were maintaining contact. And then there were a couple times I just saw them, out in public *** walking together." Further, while respondent had initially participated in drug drops, she had stopped participating "at the end of June" 2023. Otten was concerned because respondent's drug drop samples contained "high levels" of tetrahydrocannabinol (THC). Respondent additionally failed to maintain stable housing during Otten's time as caseworker, with Otten noting, "[Respondent] would either stay at her grandmother's house or *** she was just sleeping at friends' houses." Moreover, respondent's visits with the minor had been inconsistent.

¶ 9    On cross-examination, Otten acknowledged, during the relevant time period, while respondent did attend 10 visits with the minor, she missed 16 visits.

¶ 10    Megan Biroschik testified she had been J.J.'s caseworker since August 2023. Biroschik testified respondent eventually obtained stable housing in October 2023; however, Biroschik was unable to perform a safety check of the property. Regarding visitation, Biroschik testified respondent missed several visits with J.J. In Biroschik's opinion, respondent was not a

"viable return-home option" for J.J. because "[s]he ha[d] not made progress during that time period and ha[d] not completed all of her services." On cross-examination, Biroschik admitted respondent would bring gifts for J.J. during holiday visits.

¶ 11        The State further presented the testimony of several Peoria police officers, which generally showed Peoria police routinely responded to incidents between respondent and Paul C. Among the State's witnesses, Hunter Koller, a police officer with the City of Peoria, testified he responded to several calls regarding Paul C. allegedly battering respondent and destroying property.

¶ 12        After arguments from the parties, the trial court found the State proved by clear and convincing evidence respondent failed to make reasonable progress toward the return of the minor during the alleged nine-month period. Specifically, the court observed, "The pure amount of domestic violence that was going on is just breathtaking. It was continuous."

¶ 13        The trial court proceeded directly to the best interest hearing. According to the best interest report, J.J. had been in her current foster placement since May 2021. J.J. was bonded with her foster family, and her physical, mental, and emotional needs were being met by her foster parent. Regarding respondent, the report noted visits with J.J. were reduced from once a week to once a month "due to lack of engagement" from respondent. Mindy W., J.J.'s foster mother, testified J.J. had been in her care since J.J. was nine months old. Mindy was willing to provide permanency through adoption.

¶ 14        Respondent testified she did not want the trial court to terminate her parental rights. She agreed J.J.'s foster parent had "done an amazing job." Regarding J.J.'s foster placement, respondent stated, "I feel like adoption would be okay, if I get terminated, but I don't feel like I should be terminated because I love my children. I want to be in their life and I feel like they

- 4 -

should be with me."

¶ 15 The trial court found it was in J.J.'s best interest to terminate respondent's parental rights. The court observed J.J. had been in her foster placement for four years, noting J.J. was "[w]ell-taken care of in the foster home." The court further concluded respondent could not provide for J.J.'s physical safety and welfare "in light of the ongoing violence in [respondent's] life."

¶ 16 This appeal followed.

¶ 17                              II. ANALYSIS

¶ 18 On appeal, appellate counsel seeks to withdraw on the basis that he cannot raise any arguments of potential merit.

¶ 19 The procedure for appellate counsel to withdraw set forth in *Anders* applies to findings of parental unfitness and termination of parental rights. *In re S.M.*, 314 Ill. App. 3d 682, 685 (2000). Counsel's request to withdraw must "be accompanied by a brief referring to anything in the record that might arguably support the appeal." *Anders*, 386 U.S. at 744. "[C]ounsel must *** sketch the argument in support of the issues that could conceivably be raised on appeal, and then *** explain why he believes the arguments are frivolous." *S.M.*, 314 Ill. App. 3d at 685. Counsel must then conclude the case presents no viable grounds for appeal. *S.M.*, 314 Ill. App. 3d at 685. In doing so, counsel should review both the unfitness finding and the best interest determination and indicate in the brief he has done so. *S.M.*, 314 Ill. App. 3d at 685-86.

¶ 20 In the instant case, counsel asserts he has reviewed the record on appeal, including the report of proceedings of the termination hearing, and has concluded there are no appealable issues of merit. Counsel states he has considered raising an argument the trial court erred in finding respondent unfit. He also indicates he has considered raising an argument challenging the court's

best interest finding. We address each argument in turn and ultimately agree with counsel's conclusion there are no issues of arguable merit to be raised on review.

¶ 21                                    A. Unfitness Finding

¶ 22        We initially address appellate counsel's assertion no meritorious argument can be made that the trial court erred in finding respondent failed to make reasonable progress during the relevant time period. We agree.

¶ 23        Termination of parental rights under the Juvenile Court Act is a two-step process. *In re Julian K.*, 2012 IL App (1st) 112841, ¶ 1. Parental rights may not be terminated without the parent's consent unless the trial court first determines, by clear and convincing evidence, the parent is unfit as defined in section 1(D) of the Adoption Act (750 ILCS 50/1(D) (West 2024)). *In re Gwynne P.*, 215 Ill. 2d 340, 354 (2005). Pursuant to section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2024)), a parent may be found unfit if she fails to "make reasonable progress toward the return of the child to the parent during any 9-month period following the adjudication of neglected *** minor." A "parent's failure to substantially fulfill his or her obligations under the service plan and correct the conditions that brought the child into care during any 9-month period following the adjudication" constitutes a failure to make reasonable progress for purposes of section 1(D)(m)(ii). 750 ILCS 50/1(D)(m)(ii) (West 2024).

¶ 24        We will not disturb a finding of unfitness unless it is against the manifest weight of the evidence. *In re J.H.*, 2020 IL App (4th) 200150, ¶ 68. "A finding is against the manifest weight of the evidence only if the evidence clearly calls for the opposite finding [citation], such that no reasonable person could arrive at the circuit court's finding on the basis of the evidence in the record." (Internal quotation marks omitted.) *J.H.*, 2020 IL App (4th) 200150, ¶ 68. "This court pays great deference to a trial court's fitness finding because of [that court's] superior opportunity

to observe the witnesses and evaluate their credibility." (Internal quotation marks omitted.) *In re O.B.*, 2022 IL App (4th) 220419, ¶ 29.

¶ 25            Here, the State proved by clear and convincing evidence respondent failed to make reasonable progress toward the return of the minor during the relevant time period as alleged in the State's petition. Pursuant to respondent's service plan, she was to, *inter alia*, participate in individual counseling, complete domestic violence classes, participate in visitation with J.J., and participate in drug drops. Respondent's caseworkers expressed concerns about respondent continuing to maintain a relationship with Paul C., where domestic violence led to numerous police encounters. Otten testified, on a few occasions, he observed respondent and Paul C. out in public together. Indeed, the trial court described the amount of domestic violence as "just breathtaking. It was continuous." With regard to drug drops, respondent's participation had been inconsistent, but she often tested positive for THC. Moreover, respondent canceled a number of visits with J.J. Further, respondent had not participated in an updated mental health assessment and was unsuccessfully discharged from individual counseling for nonattendance.

¶ 26            Based on this evidence, respondent did not "substantially fulfill *** her obligations under the service plan" and therefore did not make reasonable progress toward the return of J.J. to her care. 750 ILCS 50/1(D)(m)(ii) (West 2024). Accordingly, we agree with counsel, any argument contesting the trial court's unfitness findings would be entirely frivolous.

¶ 27                              B. Best Interest Findings

¶ 28            Appellate counsel next asserts he can make no meritorious argument that the trial court's best interest finding was against the manifest weight of the evidence.

¶ 29            In a proceeding to terminate parental rights, the State must prove termination is in the minor's best interest by a preponderance of the evidence. *In re D.T.*, 212 Ill. 2d 347, 367

(2004). When considering whether termination of parental rights would be in the minor's best interest, the trial court must consider the following statutory factors:

> " '(1) the child's physical safety and welfare; (2) the development of the child's identity; (3) the child's familial, cultural[,] and religious background and ties; (4) the child's sense of attachments, including love, security, familiarity, continuity of affection, and the least[-]disruptive placement alternative; (5) the child's wishes and long-term goals; (6) the child's community ties; (7) the child's need for permanence, including the need for stability and continuity of relationships with parent figures and siblings; (8) the uniqueness of every family and child; (9) the risks related to substitute care; and (10) the preferences of the person available to care for the child.' " *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 52 (quoting *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1072 (2006)).

See 705 ILCS 405/1-3(4.05) (West 2024)). Although all the statutory factors must be considered, the court is "not required to explicitly reference each factor" in its decision. *In re Tajannah O.*, 2014 IL App (1st) 133119, ¶ 32. This court will not reverse a best interest finding unless it is against the manifest weight of the evidence. *In re Anaya J.G.*, 403 Ill. App. 3d 875, 883 (2010). A finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Anaya J.G.*, 403 Ill. App. 3d at 883.

¶ 30 Here, the evidence showed J.J. had resided with her foster parent since May 2021. With regard to J.J.'s sense of security, familiarity, and continuity of affection, the trial court observed J.J. had been in her current foster placement "[a] few months short of four years. [She . is] four-and-a-half years old," and her needs were being met by the foster parent. Additionally, the best interest report described the foster parent as "prompt and educated regarding [J.J.'s] medical

needs." Furthermore, the trial court noted J.J.'s background and familial ties were "extensively promoted by the foster placement." Conversely, the court concluded respondent had not provided for J.J.'s physical safety and welfare, further observing, "I don't reasonably foresee her ability to provide that in the near future" "in light of the ongoing violence in [respondent's] life." On this record, we find the court could reasonably conclude it was in the minor's best interest to terminate respondent's parental rights. We agree with counsel, any argument contesting the court's best interest finding would be entirely frivolous.

¶ 31                                    III. CONCLUSION

¶ 32          For the reasons stated, we grant appellate counsel's motion to withdraw and affirm the trial court's judgment.

¶ 33          Affirmed.